IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

William Liebhart, and
Nancy Liebhart,

       Plaintiffs,

  v.                                        Case No.

SPX Corporation,
TRC Environmental Corporation and
Apollo Dismantling Services, LLC,

       Defendants.

## COMPLAINT

Plaintiffs, William Liebhart and Nancy Liebhart, (collectively, "Plaintiffs"), by and through their attorneys, David G. Peterson, of Reinhart Boerner Van Deuren, s.c., and Carey S. Rosemarin, of the Law Offices of Carey S. Rosemarin, P.C., for their Complaint against Defendants, SPX Corporation, TRC Companies, Inc. and Apollo Dismantling Services, Inc., state as follows:

### Nature of the Case

1.     This case involves Defendants' unlawful disposal of toxic waste on a demolition site adjacent to Plaintiffs' home in Watertown, Wisconsin.  It is related to facts at issue in *William Liebhart and Nancy Liebhart v. SPX Corporation, TRC Environmental Corporation and Apollo Dismantling Services, LLC* (W.D. WI No. 3:16-cv-700), decided on summary judgment on February 7, 2020 ("SPX I").

43204838

2.     Defendants acted in concert in accordance with a common plan to demolish an aged industrial facility that was highly contaminated with polychlorinated biphenyls ("PCBs").  They also acted in concert to dispose of the PCBs by illegally burying them on the demolition site and by illegally concealing the burial.  They did not dispose of the PCBs in licensed landfills that are designed and monitored to prevent the release of PCBs, as required by law, but they untruthfully represented to the government and to the Liebharts that they did.  Defendants are jointly and severally liable for the injuries their burial caused to Plaintiffs' property.  Plaintiffs request this Court to enjoin Defendants to exhume all PCBs they illicitly buried on the demolition site and dispose of them properly.

3.     Plaintiffs' residence and property were located adjacent to the demolition site. Defendants' burial of the PCBs on the demolition site was conducted without regard to Plaintiffs' rights.  The burial was also conducted in direct contravention of the plan Defendants submitted to the United States Environmental Protection Agency ("EPA") and which EPA approved.  To this day, Defendants have not taken any remedial action at the demolition site. Because of the burial, unsafe levels of PCBs remain on the demolition site and PCBs are continuously released to Plaintiffs' property and the environment.  Defendants, by burying the PCBs and allowing the burial of the PCBs, contributed to the handling of solid and hazardous wastes which may present an imminent and substantial endangerment to health and the environment.

4.     Defendants have caused Plaintiffs to lose all reasonable use and enjoyment of their property and have caused the value of Plaintiffs' property to diminish substantially.

5.     Defendants knew or should have known that their burial of PCBs on the demolition site was illegal and presented a grave health and environmental hazard.

43204838

6.    Defendants lied to governmental authorities and attempted to conceal the burial. Yet, even after Defendants were caught and the burial was disclosed, Defendants failed to properly notify governmental authorities, failed to properly investigate the contamination they caused, and failed to remediate the contamination in accordance with federal regulations governing PCBs.  Defendants violated and continue to violate those regulations and the plan Defendants submitted to EPA.

7.    Plaintiffs seek injunctive relief and the imposition of civil penalties under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA").  RCRA authorizes this Court to enter an order to restrain any person from contributing to the past or present handling, storage, treatment transportation or disposal of hazardous wastes "which may present an imminent and substantial endangerment to health or the environment," or to take such other action as may be necessary, or both.  The statute also authorizes this Court to impose penalties of up to $101,439 per day.  Plaintiffs also seek injunctive relief under the federal Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.*  ("TSCA").  TSCA authorizes this Court to enter an order to restrain the violation of regulations pertaining to the handling, disposal and investigation of PCBs, as well as the remediation of areas contaminated by PCBs.

**The Parties**

8.    Each of Plaintiffs William and Nancy Liebhart (the "Liebharts") is a citizen of Wisconsin.

9.    The Liebharts own the property and residence at 1115 and 1117 South Third Street, in Watertown, Wisconsin (the property encompasses both lots but only 1115 is commonly used for identification of both).  Until August 2016, when William and Nancy vacated the premises because of Defendants' disposal of PCBs on their property (as set forth in the

Complaint in SPX I) they resided in the home at 1115 South Third Street.  The Liebharts also own the real property at 1113 South Third Street and 1129 South Third Street and lease the residences at those addresses to unrelated parties who inhabit the residences.  All three properties (collectively, the "Liebhart Properties") are located adjacent to and west of the property located at 304 Hart Street, Watertown (the "Site").  A large industrial facility (the "Facility") was formerly located on the Site and was demolished in 2015.

10.     Defendant SPX Corporation ("SPX") is a Delaware corporation whose principal place of business is located in Charlotte, North Carolina.  SPX owns the Site.

11.     Defendant TRC Companies, Inc. ("TRC") is a Delaware corporation whose principal place of business is located in Windsor, Connecticut.  TRC was responsible for overseeing the removal of PCBs, the demolition of the Facility and the illegal burial of PCBs on the Site.

12.      Defendant Apollo Dismantling Services, LLC ("Apollo") is a New York limited liability company whose principal place of business is located in Niagara, New York.  Apollo conducted the removal of PCBs, demolished the Facility, and illegally buried PCBs on the Site.

**Jurisdiction and Venue**

13.     Pursuant to 28 U.S.C. § 1331, this Court has federal question subject matter jurisdiction over this matter.

14.     Pursuant to 15 U.S.C. § 2619(a), 42 U.S.C. § 6972(a), and 28 U.S.C. § 1391(b), venue is proper in this Court because this case arises out of actions occurring at and pertaining to property located in Watertown, Wisconsin, which is located within this judicial district.

43204838

**Background**

15.     The Liebhart Family's roots in Watertown go back over a century.  In or around 1908, Dr. Charles Brasch, William Liebhart's maternal grandfather, built the house at 1115 South Third Street, largely with his own labor.  Since then, three generations of the family have lived there.

16.     The Facility came later.  On information and belief, the first part of the Facility was constructed in the 1920s.  But the Site consisted of approximately 5.3 acres and there was room to expand.  Eventually, the Facility was enlarged to 174,000 square feet, and at the time of the demolition, the western wall of the Facility was less than ten feet from the Liebharts' backyard.

17.     Originally, the Facility housed a woodworking factory.  But in the 1950s it was purchased by the Hevi-Duty Electric Company, which manufactured electrical transformers, furnaces and other equipment there until approximately 1971.  The use of PCBs in electrical transformers in those years was common.  PCB fluid was regularly added to the oil inside the transformers and other heat generating equipment because of its dielectric and insulating qualities.

18.     On information and belief, Defendant SPX became the owner of the Site and the Facility in 1998 and allowed it to lay idle for the ensuing years.  Also, on information and belief, through a series of corporate mergers, Defendant SPX acceded to the liabilities of prior occupants of the Facility, including but not limited to Hevi-Duty Electric Company.

19.     In 2009, SPX retained Delta Consultants, of Shorewood, Minnesota ("Delta") for the purpose of assessing the extent of PCB contamination in the Facility.  Between October 2009 and May 2010, Delta collected 72 "wipe samples" from the floor, and 586 bulk concrete

samples.  Laboratory analyses showed that "approximately 20,650 square feet of concrete

contain[ed] PCBs at concentrations greater than 10 mg/kg [parts per million]."

20.  After four years, SPX finally resolved to demolish the Facility.

**Toxicity and Regulation of PCBs**

21.  The International Agency for Research on Cancer ("IARC") has concluded as

follows:

> There is sufficient evidence in humans for the carcinogenicity of polychlorinated biphenyls (PCBs).  PCBs cause malignant melanoma.  Positive associations have been observed for non-Hodgkin lymphoma and cancer of the breast.

IARC Monographs on the Evaluation of Carcinogenic Risks to Humans; Polychlorinated Biphenyls and Polybrominated Biphenyls," Volume 107 (2016) at p.439. http://publications.iarc.fr/Book-And-Report-Series/Iarc-Monographs-On-The-Evaluation-Of-Carcinogenic-Risks-To-Humans/Polychlorinated-Biphenyls-And-Polybrominated-Biphenyls-2014.

22.  EPA's "hazard summary," last revised in January 2000, states as follows:

> Polychlorinated biphenyls (PCBs) are a group of chemicals that contain 209 individual compounds (known as congeners) with varying harmful effects. Information on specific congener toxicity is very limited.  Most toxicity testing has been done on specific commercial mixtures; however, PCB mixtures found in the environment will differ in composition from the commercial mixtures because of partitioning, biotransformation, and bioaccumulation.  The U.S. Environmental Protection Agency (EPA) treats all PCBs as being potentially hazardous based on results from some formulations.  However, this can have large uncertainty for any given mixture situation.  PCBs are no longer produced or used in the United States today; the major source of exposure to PCBs today is the redistribution of PCBs already present in soil and water.  *Chronic (long-term) exposure to some PCB formulations by inhalation in humans results in respiratory tract symptoms, gastrointestinal effects, mild liver effects, and effects on the skin and eyes such as chloracne, skin rashes, and eye irritation.*  Epidemiological studies indicate an association between dietary PCB exposures and developmental effects.  Human studies provide inconclusive, yet suggestive, evidence of an association between PCBs exposure and cancer.  Animal studies have reported an increase in liver tumors in rats and mice exposed orally to all tested PCB formulations.  EPA has classified PCBs as a Group B2, probable human carcinogen.

https://www3.epa.gov/airtoxics/hlthef/polychlo.html (emphasis added).

23.     Hundreds of chemicals are governed by a numerous federal statutes and regulations.  However, in 1976 Congress addressed PCBs specifically in section 6(e) of the Toxic Substances Control Act ("TSCA").  15 U.S.C. § 2605(e).

24.     Due to the documented adverse health effects of PCBs, Congress, with limited exception, prohibited the "manufacture, processing, distribution in commerce or use (or any combination of such activities) of any polychlorinated biphenyl in a manner other than in a *totally enclosed manner*."  15 U.S.C.  § 2605(e)(2)(A) [emphasis added].

25.     Congress defined the term "totally enclosed manner" as "any manner which <u>will ensure</u> that any exposure of human beings or the environment to a polychlorinated biphenyl <u>will be insignificant</u> as determined by the Administrator [of EPA] by rule."  15 U.S.C. § 2605(e)(2)(C) (emphasis added).

26.     However, the Administrator determined that <u>any exposure may be significant</u>. EPA's regulations state in pertinent part as follows:

> . . . the Administrator hereby finds, for purposes of section 6(e)(2)(c) of TSCA, that any exposure of human beings or the environment to PCBs, as measured or detected by any scientifically acceptable analytical method, may be significant, depending on such factors as the quantity of PCBs involved in the exposure, the likelihood of exposure to humans and the environment, and the effect of exposure.

40 CFR § 761.20.

27.     On or about December 22, 2014, TRC, on behalf of SPX, submitted to EPA a document entitled, "Self-Implementing On-Site Cleanup and Disposal of PCB Remediation Waste" (the **"TRC-SPX Cleanup Plan"**).  That document informed EPA that SPX was going to have Apollo remove the PCB-contaminated concrete and subsequently demolish the Facility, all under the supervision of TRC.  It also included a copy of Delta's report, which showed that the Facility contained released PCBs at concentrations ranging from non-detectable to 3,310 ppm

[parts per million].  Defendants relied on the Delta report for the demolition and have admitted that they did not collect additional samples for purposes of disposal of the PCB-contaminated concrete floor during and after the demolition.

28.     Figure 4 of the Delta Report consisted of a diagram that displayed concentrations of PCBs in the top one inch of the concrete floor.  TRC used that diagram to separate concrete containing PCBs over 50 ppm, and concrete containing PCBs under 50 ppm.  TRC superimposed five polygons on the diagram.  The Delta data showed that the area inside the polygons contained over 50 ppm and it showed that the remaining area outside the polygons contained concrete at lower concentrations of PCBs (the **"Remaining PCBs"**).

29.     The TRC-SPX Cleanup Plan included the diagram with the five polygons.  It committed to dispose all the over 50 ppm concrete from the five polygons in the "Subtitle C" (referring to RCRA) landfill operated by Heritage Environmental Services located in Roachdale, Indiana.

30.     The TRC-SPX Cleanup Plan also articulated the plan for the Remaining PCBs.  It stated the Remaining PCBs would be removed and sampled, and if found to contain over 0.74 ppm (Wisconsin's industrial site cleanup level), they would be disposed off-site in a "Subtitle D" (again, referring to RCRA) landfill.  The TRC-SPX Cleanup Plan emphasized that only PCB-contaminated concrete shown to have less than 0.74 ppm would remain on-site.

31.     The term, **"PCB remediation waste"** is defined by the federal PCB regulations. It pertains to uncontrolled discharges of PCBs that occurred in or prior to the late 1970s if the concentration of PCBs was at least 50 ppm.  Its complex regulatory definition is as follows:

> PCB remediation waste means waste containing PCBs as a result of a spill, release, or other unauthorized disposal, at the following concentrations: Materials disposed of prior to April 18, 1978, that are currently at concentrations ≥50 ppm PCBs, regardless of the concentration of the original spill; materials which are

43204838

currently at any volume or concentration where the original source was ≥500 ppm PCBs beginning on April 18, 1978, or ≥50 ppm PCBs beginning on July 2, 1979; and materials which are currently at any concentration if the PCBs are spilled or released from a source not authorized for use under this part. *PCB remediation waste means soil, rags, and other debris generated as a result of any PCB spill cleanup, including, but not limited to:*

(1)Environmental media containing PCBs, such as soil and gravel; dredged materials, such as sediments, settled sediment fines, and aqueous decantate from sediment.

(2)    Sewage sludge containing <50 ppm PCBs and not in use according to § 761.20(a)(4); PCB sewage sludge; commercial or industrial sludge contaminated as the result of a spill of PCBs including sludges located in or removed from any pollution control device; aqueous decantate from an industrial sludge.

(3)    *Buildings and other man-made structures (such as concrete floors, wood floors, or walls contaminated from a leaking PCB or PCB–Contaminated Transformer), porous surfaces, and non-porous surfaces.*

40 C.F.R. § 761.3 (emphasis added).

32.     An entire section of EPA's regulations is devoted to the handling and disposal of PCB remediation waste.  40 CFR § 761.61.  Those regulations reflect the danger to health and the environment that PCBs present and prescribe detailed technical remediation procedures and provide for a "self-implementing on-site cleanup."  40 CFR §§ 761.61(a)(2) and 761.61(a)(3). Persons who wish to conduct such a cleanup must submit a plan incorporating the relevant procedures to EPA and the state environmental protection agency (in this case, the Wisconsin Department of Natural Resources, "WDNR") prior to the commencement of the cleanup.

33.     The TRC-SPX Cleanup Plan was submitted to satisfy this requirement.  It stated, "SPX is seeking EPA's approval under 40 CFR § 761.61(a) in order to perform a *Self-implementing on-site cleanup and disposal of PCB remediation waste.*"  (Emphasis in original.)

34.     In a letter dated February 2, 2015, U.S.EPA approved the TRC-SPX Cleanup Plan, subject to three conditions:  i) within 60 days of completion of the project, submittal of a

43204838

completion report, including verification sampling results and other data; ii) within 60 days of completion of the project, filing of a deed restriction prohibiting the use of the property for residential purposes; and iii) 45 days advance notice to U.S.EPA of SPX's intent (if any) to transfer ownership of or responsibility for the site.  Defendants were bound to comply with the plan and the conditions EPA imposed.

35.     Shortly after receipt of the EPA approval, SPX's contractor, Defendant Apollo, commenced the remediation and demolition under the supervision of Defendant TRC.

36.     But unbeknownst to anyone except themselves, Defendants violated both the TRC-SPX Cleanup Plan and the federal PCB regulations by burying the Remaining PCBs on the Site.  In sworn testimony, Samuel DeFranks, President of Defendant Apollo, stated he buried the Remaining PCBs all over the Site.

37.     Defendants' burial violated the TRC-SPX Cleanup Plan, which emphatically stated in pertinent part, "should the  any [*sic*] pile material test greater than 0.74 mg/kg [ppm] it will <u>not</u> be used onsite but will be disposed into a Subtitle D landfill . . . . " (emphasis in original).

38.     Defendants lied to EPA about the burial.  In February 2016, a year after the EPA conditional approval, Defendants submitted to EPA a draft completion report of the demolition. Defendants stated in that draft that they properly disposed the "majority" of the Remaining PCBs off-Site. But Defendants knew at the time of that statement that they disposed only a *de minimis* amount of the Remaining PCBs offsite and buried the vast majority of the Remaining PCBs on the Site.

39.     Defendants also lied to Plaintiffs about the burial in the SPX I litigation. Defendant TRC stated in its response to Plaintiffs' interrogatory, that "the remaining flooring

was removed to a Subtitle D landfill facility by Waste Management."  (The term, "remaining flooring" in the quote is the material referred to herein as "Remaining PCBs.")  Responses to the same interrogatory by Defendants SPX and Apollo supported TRC's lie.

40.     After Plaintiffs exposed Defendants' illegal burial of PCBs on the Site, Defendants collected additional data in the area of the burial and confirmed the existence of PCBs in concentrations exceeding both the applicable Federal cleanup level of 1.0 ppm and the Wisconsin industrial site cleanup level of 0.74 ppm.  Defendants' additional data also showed PCBs in concentrations as high as 1,000 ppm remaining on the Site.

41.     Additionally, during the demolition, Defendants destroyed a storm sewer inlet that was located on the north side of the Site.  As a result, sediment containing PCBs entered and clogged the storm sewer inlet.  The sediment contained PCB concentrations in excess of the 0.74 ppm limit that Defendants promised to remove from the Site.

42.     The clogged storm sewer inlet caused unprecedented flooding of both the Site and the residences adjacent to the Site, owned by the Liebharts and others.  The floodwaters also contained PCBs in excess of the 0.74 limit that Defendants promised to remove from the Site.

43.     The storm sewer inlet was a point of access to sewers that emptied directly into the Rock River, located about 300 feet west of the Site.  The content of the storm sewers is not treated between the storm sewer inlet and the Rock River.  Defendants caused the damaged storm sewer inlet to be opened in a way that allows continued access of the buried Remaining PCBs to the storm sewer.  On information and belief, buried Remaining PCBs are continuing to drain directly into the Rock River, and because of the huge volume of PCBs that Defendants buried on the Site, will continue to do so for centuries to come unless Defendants are forced to remove all illegally buried PCBs from the Site.

43204838

**Count I**

**Resource Conservation and Recovery Act Citizen Suit - U.S.C. § 6972(A)(1)(B) Imminent and Substantial Endangerment from PCBs Defendants Buried on the Site**

44.   Plaintiffs incorporate by reference their allegations in Paragraphs 1 through and including 43, in this Paragraph 44, as though fully set forth herein.

45.   Each of the Plaintiffs is a "person" as defined in RCRA.  42 U.S.C. § 6903(15).

46.   Each of Defendants SPX, TRC and Apollo is a "person" as defined in RCRA.  42 U.S.C. § 6903(15).

47.   RCRA defines the term, "solid waste" as follows:

> The term "solid waste" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33, or source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended (68 Stat. 923) [42 U.S.C.A. § 2011 et seq.].

42 U.S.C.A. § 6903(27).

48.   The PCBs at the Facility and on the Site, including but not limited to the Remaining PCBs, as well as any material to which they adhered, constitute solid waste, as that term is defined in 42 U.S.C.A. § 6903(27).

49.   RCRA defines the term, "hazardous waste" as follows:

> (5) The term "hazardous waste" means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—

> > (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C.A. § 6903(5).

50.     The PCBs at the Facility and on the Site, as well as any material to which they adhered, constitute hazardous waste, as that term is defined in 42 U.S.C.A. § 6903(5).

51.     RCRA defines the term, "disposal" as follows:

> The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C.A. § 6903(3).

52.     Defendants' burial of the Remaining PCBs constituted the placing of solid and hazardous waste so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters and  in turn constituted "disposal" of PCBs under 42 U.S.C.A. § 6903(3).

53.     RCRA allows any person to commence a civil action against:

> against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

42 U.S.C.A. § 6972(a)(1)(B).

54.     The PCBs that Defendants buried on the Site are continually emitted to the air by volatilization and thus threaten the health of the Liebharts and other individuals in the vicinity of the Site.

55.     The PCBs that Defendants buried on the Site are continually released to the environment by volatilization, by entering the sewer system and thus being transported untreated to the Rock River, by flooding and by entering the groundwater.  The buried PCBs continue to threaten health and the environment.

56.     Each of Defendants has contributed and continues to contribute to the past and present handling, storage, treatment, transportation and disposal of solid and hazardous waste which may present an imminent and substantial endangerment to health or the environment by burying and thus disposing the Remaining PCBs.

57.     On August 7, 2019 Plaintiffs sent a notice of Plaintiffs' intent to file this action to the Administrator of U.S.EPA, the Governor of the State of Wisconsin, the Secretary of the WDNR and each of Defendants, pursuant to 42 U.S.C. § 6972(b) and 40 CFR Part 254.

58.     Each recipient of the notice received it more than ninety days prior to the date this Complaint was filed.  No actions have been commenced by the federal or state environmental authorities during this period to address the conditions that are the subject of this Complaint.

59.     Each of Defendants SPX, TRC and Apollo are thus subject to suit by Plaintiffs pursuant to 42 U.S.C. § 6972.

60.     Pursuant to 42 U.S.C. § 6972(b)(2)(F), Plaintiffs served a copy of the Complaint on the Attorney General of the United States and the Administrator of U.S.EPA.

61.     Injunctive relief is necessary.  Defendants violated, and continue to violate, the federal PCB regulations – whose purpose is to protect health and the environment against toxic PCBs – as well as the TRC-SPX Cleanup Plan.  Defendants have failed to remedy their violations despite demands from Plaintiffs to do so.  And, Defendants concealed their burial of

43204838

PCBs on the Site and their attempted cover-up of the burial by lying about it to EPA and to litigants in SPX I.  An injunction is necessary to prevent Defendants' further illicit behavior.

62.     This Court has jurisdiction pursuant to RCRA, at 42 U.S.C. § 6972(a), to enter injunctive relief restraining and enjoining Defendants from allowing continued storage and disposal of the PCBs buried on the Site, where the PCBs continue to present an imminent and substantial endangerment to health and the environment, to compel Defendants to properly remove the buried PCBs and properly dispose of them off-site, to apply all appropriate civil penalties under 42 U.S.C. §§ 6928(a) and (g), and to award Plaintiffs the costs, expenses and attorneys' fees incurred in prosecuting this claim.

## Count II

### Toxic Substances Control Act Citizen Civil Action, 15 U.S.C. § 2619
### Continuing Violation of 40 CFR Part 761, Subpart D,
### Burial of PCBs Over 50 ppm

63.     Plaintiffs incorporate by reference their allegations in Paragraphs 1 through and including 62 in this Paragraph 63, as though fully set forth herein.

64.     In the TRC-SPX Cleanup Plan Defendants submitted to EPA on December 22, 2014, Defendants designated for disposal all Remaining PCBs containing over 0.74 ppm. Defendants stated in the TRC-SPX Cleanup Plan that they would dispose of all such waste in approved landfills off-site.

65.     But Defendants violated this commitment.  After the cleanup described in the TRC-SPX Cleanup Plan was underway, and after EPA approved that plan, Apollo buried on the Site virtually all of the Remaining PCBs.

66.     Defendants did not notify EPA in advance of this failure to comply with the conditionally approved TRC-SPX Cleanup Plan, as required by 40 CFR § 761.61(a)(3)(ii).

43204838

67.     The applicable federal regulations, in 40 CFR § 761.3, define "disposal" as follows:

> Disposal means intentionally or accidentally to discard, throw away, or otherwise complete or terminate the useful life of PCBs and PCB Items.  Disposal includes spills, leaks, and other uncontrolled discharges of PCBs and PCB Items.

68.     Apollo's burial of the Remaining PCBs constituted disposal under 40 CFR § 761.3.

69.     Under 40 CFR § 761.3, concrete is a "porous surface."

70.     Under 40 CFR § 761.61(a)(5)(iii), porous surfaces must be disposed as "bulk remediation waste" according to 40 CFR § 761.61(a)(5)(i).  In turn, 40 CFR § 761.61(a)(5)(i)**(B)(2)(i)** (emphasis added) states:

> Unless sampled and analyzed for disposal according to the procedures set out in §§ 761.283, 761.286, and 761.292, the bulk remediation waste shall be assumed to contain $\geq$ 50 ppm PCBs.

71.     Defendants have admitted they did not sample and analyze the concrete in accordance with the procedures set forth in 40 CFR § 761.283.  Therefore, Defendants had to assume that all the concrete on the Site, including but not limited to the Remaining PCBs, contained over 50 ppm PCBs as a matter of law.

72.     Under 40 CFR § 761.61(a)(5)(i)(B)(2)(iii), concrete with PCBs over 50 ppm must be disposed in a hazardous waste landfill permitted by EPA under 42 U.S.C. § 6924, or by a State authorized under 42 U.S.C. § 6926, or a PCB disposal facility approved under 40 CFR Part 761.

73.     The Site is not a permitted hazardous waste landfill or an approved PCB disposal facility.  Therefore, the burial constituted unlawful disposal.

74.     Violations of the PCB disposal regulations, including but not limited to 40 CFR § 761.61(a)(5)(i)(B)(2), continue as long as the PCBs remain in a state of improper disposal. Defendants are continuing to violate 40 CFR § 761.61(a)(5)(i)(B)(2) because the Remaining PCBs that Defendants buried on the Site remain there.

75.     SPX and TRC knew or should have known about Apollo's burial of the PCB-contaminated concrete on the Site and had the control, authority and duty to prevent and/or stop it.  By burying and causing or allowing the burial of PCB-contaminated concrete on the Site each of Defendants violated and continue to violate 40 CFR § 761.61(a)(5)(i)(B)(2) and the EPA conditionally-approved TRC-SPX Cleanup Plan.

76.     This Court has jurisdiction pursuant to TSCA at 15 U.S.C. § 2619(a)(1) to enter injunctive relief restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, compelling Defendants to perform an investigation in accordance with federal PCB regulations to define the extent of contamination caused by Defendants' burial of PCBs, compelling Defendants to remove all PCBs they unlawfully buried on the Site and dispose of it properly off-site, restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, and awarding Plaintiffs the costs, expenses and attorneys' fees incurred in prosecuting this claim.

### Count III

### Toxic Substances Control Act Citizen Civil Action, 15 U.S.C. § 2619
### Continuing Violation of 40 CFR Part 761, Subpart D,
### Burial of PCBs Under 50 ppm

77.     Plaintiffs incorporate by reference their allegations in Paragraphs 1 through and including 76 in this Paragraph 77, as though fully set forth herein.

43204838

78.     The Delta report showed that certain samples contained PCBs under 50 ppm.  The concrete from which Delta collected those samples was included in the Remaining PCBs.

79.     Under 40 CFR § 761.61(a)(5)(i)(B)(2)(ii), concrete with PCBs **under** 50 ppm must be disposed in accordance with 40 CFR § 761.61(a)(5)(v)(A), and that regulation requires that PCBs under 50 ppm be disposed in one of the following:

  a.  A facility permitted, licensed, or registered by a State to manage municipal solid waste subject to 40 CFR Part 258.

  b.  A facility permitted, licensed, or registered by a State to manage non-municipal non-hazardous waste subject to 40 CFR §§ 257.5 through 257.30, as applicable.

  c.  A hazardous waste landfill permitted by EPA under 42 U.S.C. § 6924, or by a State authorized under 42 U.S.C. § 6926.

  d.  A PCB disposal facility approved under 40 CFR Part 761.

80.     The Site does not qualify as any of the four types of facilities described in the immediately preceding paragraph. Therefore, Defendants' burial of the PCB-contaminated concrete on the Site constituted unlawful disposal.  SPX and TRC knew or should have known about Apollo's burial of the PCB-contaminated concrete on the Site and had the control, authority and duty to prevent and/or stop it.

81.     By burying and causing or allowing the burial of PCB-contaminated concrete on the Site each of Defendants violated and continue to violate 40 CFR §§ 761.61(a)(5)(i)(B)(2)(ii) and 761.61(a)(5)(v)(A) as well as the EPA conditionally-approved TRC-SPX Cleanup Plan.

82.     Violations of the PCB disposal regulations, including but not limited to 40 CFR §§ 761.61(a)(5)(i)(B)(2)(ii) and 761.61(a)(5)(v)(A), continue as long as the PCBs remain in a state of improper disposal.  Defendants are continuing to violate 40 CFR § 761.61(a)(5)(i)(B)(2) and the EPA conditionally-approved TRC-SPX Cleanup Plan because the Remaining PCBs Defendants buried on the Site remains there.

83.     This Court has jurisdiction pursuant to TSCA at 15 U.S.C. § 2619(a)(1) to enter injunctive relief restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, compelling Defendants to perform an investigation in accordance with federal PCB regulations to define the extent of contamination caused by Defendants' burial of PCBs, compelling Defendants to remove all PCBs they unlawfully buried on the Site and dispose of it properly off-site, restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, and awarding Plaintiffs the costs, expenses and attorneys' fees incurred in prosecuting this claim.

## Count IV (Alternative to Counts II and III)

### Toxic Substances Control Act Citizen Civil Action, 15 U.S.C. § 2619
### Continuing Violation Arising from Defendants' Storage of PCBs on the Site

84.     Plaintiffs incorporate by reference their allegations in Paragraphs 1 through and including 83 in this Paragraph 84, as though fully set forth herein.

85.     The definitions in 40 CFR § 761.3 state, "Storage for disposal means temporary storage of PCBs that have been designated for disposal."

86.     The regulations in 40 CFR § 761.65, titled, "Storage for disposal," read as follows in pertinent part:

> This section applies to the storage for disposal of PCBs at concentrations of 50 ppm or greater and PCB Items with PCB concentrations of 50 ppm or greater.
>
> (a)(1) Storage limitations. Any PCB waste shall be disposed of as required by subpart D of this part within 1–year from the date it was determined to be PCB waste and the decision was made to dispose of it. This date is the date of removal from service for disposal and the point at which the 1–year time frame for disposal begins. PCB/radioactive waste removed from service for disposal is exempt from the 1–year time limit provided that the provisions at paragraphs (a)(2)(ii) and (a)(2)(iii) of this section are followed and the waste is managed in

43204838

accordance with all other applicable Federal, State, and local laws and regulations for the management of radioactive material.

87.     As alleged in Count II, above, Defendants were required to assume that the PCBs they buried on the Site contained over 50 ppm PCBs as a matter of law.  40 CFR § 761.61(a)(5)(i)(2)(i).

88.     Burial on the Site of the Remaining PCBs was prohibited by 40 CFR § 761.61(a)(5)(i)(B)(2).

89.     "Storage for disposal means temporary storage of PCBs that have been designated for disposal." 40 CFR § 761.3.

90.     In the December 22, 2014 TRC-SPX Cleanup Plan Defendants designated all concrete >0.74 ppm PCBs for disposal off-site.

91.     Therefore, the burial of the concrete on the Site constituted temporary storage under 40 CFR § 761.65.  Defendants had only one year – until December 22, 2015 – to properly dispose of the concrete off-site.  Because Defendants have not removed the buried concrete, they continue to violate 40 CFR § 761.65.

92.     This Court has jurisdiction pursuant to TSCA at 15 U.S.C. § 2619(a)(1) to enter injunctive relief restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, compelling Defendants to perform an investigation in accordance with federal PCB regulations to define the extent of contamination caused by Defendants' burial of PCBs, compelling Defendants to remove all PCBs they unlawfully buried on the Site and dispose of it properly off-site, restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, and awarding Plaintiffs the costs, expenses and attorneys' fees incurred in prosecuting this claim.

43204838

**Count V**

**Toxic Substances Control Act Citizen Civil Action, 15 U.S.C. § 2619
Continuing Violation of 40 CFR Part 761, Subpart G,
Failure to Investigate Extent of PCBs that Defendants Buried**

93.     Plaintiffs incorporate by reference their allegations in Paragraphs 1 through and

including 92 in this Paragraph 93, as though fully set forth herein.

94.     In pertinent part, 40 CFR Part 761, Subpart G, reads:

> (a) General. Unless expressly limited, the reporting, disposal, and precleanup
> sampling requirements in paragraphs (a) (1) through (3) of this section apply to all
> spills of PCBs at concentrations of 50 ppm or greater which are subject to
> decontamination requirements under TSCA, including those spills listed under
> § 761.120(b) which are excluded from the cleanup standards at paragraphs (b) and
> (c) of this section.

40 CFR § 761.125(a).

95.     The term "spill" is defined as follows:

> Spill means both intentional and unintentional spills, leaks, and other uncontrolled
> discharges where the release results in any quantity of PCBs running off or about
> to run off the external surface of the equipment or other PCB source, as well as
> the contamination resulting from those releases. This policy applies to spills of 50
> ppm or greater PCBs. The concentration of PCBs spilled is determined by the
> PCB concentration in the material spilled as opposed to the concentration of PCBs
> in the material onto which the PCBs were spilled. Where a spill of untested
> mineral oil occurs, the oil is presumed to contain greater than 50 ppm, but less
> than 500 ppm PCBs and is subject to the relevant requirements of this policy.

40 C.F.R. § 761.123

96.     Defendants' burial of the Remaining PCBs on the Site constituted a spill under 40

C.F.R. § 761.123.  Each deposit of PCBs on the Site constitutes a separate spill.

97.     As alleged in Count II, above, Defendants were required to assume that the PCBs

they buried on the Site contained over 50 ppm PCBs as a matter of law.  40 CFR

§ 761.61(a)(5)(i)(2)(i).

98.     The term, "responsible party" is defined as the owner of the PCB equipment, facility or other source of PCBs or his/her designated agent (e.g., a facility manager or foreman). 40 C.F.R. § 761.123.  Each of Defendants SPX, TRC and Apollo is a responsible party with respect to the burial of PCBs on the Site.

99.     Defendants buried the PCBs over the entire Site, but in distinct invisible areas that cannot be identified without further investigation.

100.    Subpart G requires each responsible party to rigorously investigate each spill in the following manner:

> Determination of spill boundaries in the absence of visible traces.  For spills where there are insufficient visible traces yet there is evidence of a leak or spill, the boundaries of the spill are to be determined by using a statistically based sampling scheme.

40 CFR § 761.125(a)(3).

101.    Each of Defendants SPX, TRC and Apollo violated and continue to violate 40 CFR § 761.125(a)(3) because they have not defined the spill boundaries by the use of the mandatory statistically based sampling scheme, or otherwise.

102.    This Court has jurisdiction pursuant to TSCA at 15 U.S.C. § 2619(a)(1) to enter injunctive relief restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, compelling Defendants to perform an investigation in accordance with federal PCB regulations to define the extent of contamination caused by Defendants' burial of PCBs, compelling Defendants to remove all PCBs they unlawfully buried on the Site and dispose of it properly off-site, restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, and awarding Plaintiffs the costs, expenses and attorneys' fees incurred in prosecuting this claim.

43204838

## Count VI

### Toxic Substances Control Act Citizen Civil Action, 15 U.S.C. § 2619
### Continuing Violation of 40 CFR Part 761, Subpart G,
### Failure to Remove PCBs that Defendants Buried

103.     Plaintiffs incorporate by reference their allegations in Paragraphs 1 through and including 102 in this Paragraph 103, as though fully set forth herein.

104.     Subpart G requires each responsible party to remove the contamination caused by their spills of PCBs by excavating the spill area and restoring the area with clean fill.  40 CFR § 761.125 (b)(1)(ii).

105.     Each of Defendants SPX, TRC and Apollo violated and continue to violate 40 CFR § 761.125 (b)(1)(ii) because they have not excavated the contamination caused by their burial of PCBs.

106.     This Court has jurisdiction pursuant to TSCA at 15 U.S.C. § 2619(a)(1) to enter injunctive relief restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, compelling Defendants to perform an investigation in accordance with federal PCB regulations to define the extent of contamination caused by Defendants' burial of PCBs, compelling Defendants to remove all PCBs they unlawfully buried on the Site and dispose of it properly off-site, restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, and awarding Plaintiffs the costs, expenses and attorneys' fees incurred in prosecuting this claim.

43204838

**Count VII**

**Toxic Substances Control Act Citizen Civil Action, 15 U.S.C. § 2619**
**Continuing Violation of 40 CFR Part 761, Subpart G,**
**Failure to Maintain Records and Certify Veracity**

107.    Plaintiffs incorporate by reference their allegations in Paragraphs 1 through and including 106 in this Paragraph 107, as though fully set forth herein.

108.    Subpart G requires each responsible party to document the cleanup required under Subpart G.  40 CFR § 761.125(b)(3).

109.    Subpart G also requires each responsible party to certify the records of the cleanup by signing a statement stating that the requirements of Subpart G have been met and the information contained in the record is true to the best of his or her knowledge.  40 CFR § 761.125(b)(3)(vii).

110.    Among the records that Subpart G requires each responsible party to maintain is "Precleanup sampling data used to establish the spill boundaries if required because of insufficient visible traces, and a brief description of the sampling methodology used to establish the spill boundaries."  40 CFR § 761.125(b)(3)(v).

111.    Each of Defendants SPX, TRC and Apollo violated and continue to violate 40 CFR § 761.125 (b)(1)(ii) because they have not complied with either the afore-mentioned records and certification requirements or any other requirements of 40 CFR § 761.125(b)(3).

112.    This Court has jurisdiction pursuant to TSCA at 15 U.S.C. § 2619(a)(1) to enter injunctive relief restraining and enjoining Defendants from the continued violation of the federal PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, compelling Defendants to perform an investigation in accordance with federal PCB regulations to define the extent of contamination caused by Defendants' burial of PCBs, compelling Defendants to

remove all PCBs they unlawfully buried on the Site and dispose of it properly off-site,

restraining and enjoining Defendants from the continued violation of the federal PCB regulations

and the EPA conditionally-approved TRC-SPX Cleanup Plan, and awarding Plaintiffs the costs,

expenses and attorneys' fees incurred in prosecuting this claim.

**Count VIII**

**Toxic Substances Control Act Citizen Civil Action, 15 U.S.C. § 2619**
**Continuing Violation of 40 CFR Part 761.61,**
**Failure to Comply with EPA's Conditions of Approval of TRC-SPX Cleanup Plan**

113.    Plaintiffs incorporate by reference their allegations in Paragraphs 1 through and

including 112 in this Paragraph 113, as though fully set forth herein.

114.    EPA's approval of the TRC-SPX Cleanup Plan was conditioned on submittal of a

completion report, including verification sampling results and other data; within 60 days of

completion of the project.

115.    Each of Defendants SPX, TRC and Apollo violated and continue to violate the

EPA-approved TRC-SPX Cleanup Plan because they have not submitted a completion report and

have not complied with the conditions of EPA's approval.

116.    This Court has jurisdiction pursuant to TSCA at 15 U.S.C. § 2619(a)(1) to enter

injunctive relief restraining and enjoining Defendants from the continued violation of the federal

PCB regulations and the EPA conditionally-approved TRC-SPX Cleanup Plan, compelling

Defendants to perform an investigation in accordance with federal PCB regulations to define the

extent of contamination caused by Defendants' burial of PCBs, compelling Defendants to

remove all PCBs they unlawfully buried on the Site and dispose of it properly off-site,

restraining and enjoining Defendants from the continued violation of the federal PCB regulations

43204838

and the EPA conditionally-approved TRC-SPX Cleanup Plan, and awarding Plaintiffs the costs, expenses and attorneys' fees incurred in prosecuting this claim.

**Relief Requested**

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants jointly and severally, and request entry of the following relief:

A.   Pursuant to Plaintiffs' RCRA claims, that the Court enter an order preliminarily and permanently restraining and enjoining Defendants to properly investigate and remediate the full extent of contamination they caused by burying the Remaining PCBs on the Site, and otherwise cause Defendants to cease contributing to the handling, storage, treatment, transportation or disposal of any and all hazardous waste which may cause an imminent and substantial endangerment to health or the environment.

B.   Pursuant to Plaintiffs' RCRA claims, that the Court enter an order preliminarily and permanently restraining and enjoining Defendants to properly remove the Remaining PCBs they buried on the Site and otherwise cause Defendants to cease contributing to the handling, storage, treatment, transportation or disposal of any and all hazardous waste which may cause and imminent and substantial endangerment to health or the environment.

C.   Pursuant to Plaintiffs' RCRA claims, that the Court award Plaintiffs their costs of litigation, including reasonable attorney and expert witness fees.  42 U.S.C. § 6972(e).

D.   Pursuant to Plaintiffs' RCRA claims, that the Court impose on each Defendant civil penalties in the amounts of:

- $37,500 per day for each violation that occurred between December 6, 2013 and November 2, 2015; and

43204838

- $75,867 or $101,439 per day for each violation that occurred after November 2, 2015,

all as provided by 42 U.S.C. § 6972(a) and 40 CFR § 19.4.

E.   Pursuant to Plaintiffs' TSCA claims, that the Court enter an order preliminarily and permanently restraining Defendants from violating, and enjoining Defendants to comply with all applicable regulations governing the handling of PCBs on the Facility and the Site and governing the disposal and uncontrolled release of PCBs caused by Defendants' Demolition.

F.   Pursuant to Plaintiffs' TSCA claims, that the Court enjoin Defendants to notify EPA of the burial of PCB wastes on the Site.

G.   Pursuant to Plaintiffs' TSCA claims, that the Court enjoin Defendants to properly investigate the extent of the contamination caused by the burial in compliance with all applicable regulations.

H.   Pursuant to Plaintiffs' TSCA claims, that the Court enjoin Defendants to properly remediate all contamination caused by the burial in compliance with all applicable regulations.

I.   Pursuant to Plaintiffs' TSCA claims, that the Court enjoin Defendants to remove all PCBs buried on the Site and properly dispose of such PCBs off-site in compliance with all applicable regulations.

J.   Pursuant to Plaintiffs' TSCA claims, that the Court award Plaintiffs their costs of litigation, including reasonable attorney and expert witness fees.  15 U.S.C. § 2619(c)(2).

Dated: March 6, 2020

43204838

By:   *David G. Peterson*
                Attorneys for Plaintiff

David G. Peterson
WI State Bar No. 1001047
Reinhart Boerner Van Deuren s.c.
N16 W23250 Stone Ridge Drive, Suite One
Waukesha, WI 53188
Telephone:  262-951-4527
E-mail:  dgpeterson@reinhartlaw.com

Carey S. Rosemarin
Law Offices of Carey S. Rosemarin, P.C.
500 Skokie Boulevard, Suite 510
Northbrook, IL 60062
Telephone:  847-897-8000 x11
E-mail:  csr@rosemarinlaw.com

43204838